# NASHVILLE MILK CO. *v.* CARNATION COMPANY.

No. 67.   Argued November 21, 1957.—Decided
January 20, 1958.

*Jerome F. Dixon* argued the cause for petitioner. With him on the brief were *Karl Edwin Seyfarth, Sherwood Dixon* and *Edward M. Sullivan.*

*Melville C. Williams* argued the cause for respondent. With him on the brief was *Frank F. Fowle.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

Petitioner, alleging that it had been injured by respondent's sales at unreasonably low prices in violation of § 3 of the Robinson-Patman Act,[1] 49 Stat. 1526, 15 U. S. C. § 13a, sued the respondent for treble damages and injunctive relief under §§ 4 and 16 of the Clayton Act, 38 Stat. 730, as amended, 15 U. S. C. §§ 15, 26. The District Court dismissed the complaint on the ground that the private remedies afforded by §§ 4 and 16 of the Clayton Act cannot be based on a violation of § 3 of the Robinson-Patman Act. The Court of Appeals affirmed.

---

[1] Section 3 of the Robinson-Patman Act provides:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to be a party to, or assist in, any transaction of sale, or contract to sell, which discriminates to his knowledge against competitors of the purchaser, in that, any discount, rebate, allowance, or advertising service charge is granted to the purchaser over and above any discount, rebate, allowance, or advertising service charge available at the time of such transaction to said competitors in respect of a sale of goods of like grade, quality, and quantity; to sell, or contract to sell, goods in any part of the United States at prices lower than those exacted by said person elsewhere in the United States for the purpose of destroying competition, or eliminating a competitor in such part of the United States; or, to sell, or contract to sell, goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor.

"Any person violating any of the provisions of this section shall, upon conviction thereof, be fined not more than $5,000 or imprisoned not more than one year, or both."

238 F. 2d 86. We brought the case here, 352 U. S. 1023, to resolve a conflict between the ruling below and a decision of the Court of Appeals for the Tenth Circuit holding that such a private action does lie. *Vance* v. *Safeway Stores, Inc.*, 239 F. 2d 144.

Sections 4 and 16 of the Clayton Act permit private actions of this kind [2] only for injuries resulting from practices forbidden by the "antitrust laws" as defined in § 1 of the Clayton Act,[3] namely: (1) the Sherman Act (Act of July 2, 1890); (2) parts of the Wilson Tariff Act (Act of August 27, 1894); (3) the Act amending the Wilson Tariff Act (Act of February 12, 1913); and (4) the Clayton Act ("this Act"). In light of the much other so-called antitrust legislation enacted prior and subsequent

---

[2] Section 4 of the Clayton Act provides:

"That any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Section 16 of the Clayton Act grants a private cause of action for injunctive relief against "threatened loss or damage by a violation of the antitrust laws."

[3] 38 Stat. 730. Section 1 of the Clayton Act provides:

"That 'antitrust laws,' as used herein, includes the Act entitled 'An Act to protect trade and commerce against unlawful restraints and monopolies,' approved July second, eighteen hundred and ninety; sections seventy-three to seventy-seven, inclusive, of an Act entitled 'An Act to reduce taxation, to provide revenue for the Government, and for other purposes,' of August twenty-seventh, eighteen hundred and ninety-four; an Act entitled 'An Act to amend sections seventy-three and seventy-six of the Act of August twenty-seventh, eighteen hundred and ninety-four, entitled "An Act to reduce taxation, to provide revenue for the Government, and for other purposes," ' approved February twelfth, nineteen hundred and thirteen; and also this Act."

to the Clayton Act,[4] it seems plain that the rule *expressio unius exclusio alterius* is applicable, and that the definition contained in § 1 of the Clayton Act is exclusive. Therefore it is of no moment here that the Robinson-Patman Act may be colloquially described as an "antitrust" statute. And since no one claims that § 3 of the Robinson-Patman Act can be regarded as an amendment to the Sherman Act or the Wilson Tariff Act, the precise issue before us is whether Congress made that section of the Robinson-Patman Act a part of the Clayton Act, thus making it one of the "antitrust laws" whose violation can lead to the private causes of action authorized by §§ 4 and 16. For the reasons stated below we hold that this is not the case.[5]

## I.

The Robinson-Patman Act, consisting of four sections, convincingly shows on its face that § 3 does not amend the Clayton Act, but stands on its own footing and carries its own sanctions.

The first section of the Act does expressly amend § 2 of the Clayton Act, which prohibits certain kinds of price discriminations, and allied activities, on the part of those engaged in domestic or territorial commerce. The first paragraph of this section reads:

> "That section 2 of the [Clayton Act] . . . is amended to read as follows:"

.    .    .    .    .

---

[4] A total of 71 statutes (including the Clayton Act) are set forth in a compilation prepared by Elmer A. Lewis, Superintendent of the Document Room, House of Representatives, entitled Antitrust Laws with Amendments, 1890–1951 (1951). Of these statutes, 21 were on the books in 1914 when the Clayton Act was enacted, and 49 became law thereafter.

[5] The issue now before us was not decided in *Bruce's Juices, Inc.,* v. *American Can Co.,* 330 U. S. 743, or *Moore* v. *Mead's Fine Bread Co.,* 348 U. S. 115.

The section then sets forth *in haec verba,* and within quotation marks, all the provisions of § 2, as modified by the amending language. 49 Stat. 1526, 15 U. S. C. § 13 (a).

Two other sections of the Act are not in point here. Section 2 simply applies the amending provisions of § 1 to litigation commenced under the former provisions of § 2 of the Clayton Act, 15 U. S. C. § 21a; and § 4 deals with certain practices of cooperative associations. 15 U. S. C. § 13b.

The only other section of the Act is § 3, with which we are concerned here. It prohibits three kinds of trade practices, (a) general price discriminations, (b) geographical price discriminations, and (c) selling "at unreasonably low prices for the purpose of destroying competition or eliminating a competitor." The important thing to note is that this section, in contrast to § 1 of the Robinson-Patman Act, does not on its face amend the Clayton Act. Further, § 3 contains only penal sanctions for violation of its provisions; in the absence of a clear expression of congressional intent to the contrary, these sanctions should under familiar principles be considered exclusive, rather than supplemented by civil sanctions of a distinct statute. See *D. R. Wilder Mfg. Co.* v. *Corn Products Refining Co.,* 236 U. S. 165, 174–175.

The conclusion that only § 1 of the Robinson-Patman Act can be regarded as amendatory of the Clayton Act is further borne out by the title of the whole Robinson-Patman Act, which reads (49 Stat. 1526):

"An Act

"To amend section 2 of [the Clayton Act] . . . and for *other purposes.*" (Italics added.)

The "other purposes" can only refer to the sections of the Act other than the first section.

Because there is a partial overlap between the price-discrimination clauses of § 3 of the Robinson-Patman Act (see note 1, *supra*) and those of § 2 of the Clayton Act, as amended by the first section of the Robinson-Patman Act,[6] it is argued that it would be anomalous to allow a private cause of action for price discrimination in violation of § 2 of the Clayton Act but to deny a private cause of action based on a violation of § 3 of the Robinson-Patman Act. This argument, however, overlooks the fact that § 3 of the Robinson-Patman Act includes a provision which is *not* found in § 2 of the Clayton Act, namely, selling "at unreasonably low prices for the purpose of destroying competition or eliminating a competitor." It is not an idle conjecture that the possibility of abuse inherent in a private cause of action based upon this vague provision [7] was among the factors which led Congress to leave the enforcement of the provisions of § 3 solely in the hands

---

[6] 15 U. S. C. § 13 (a). Section 2 of the Clayton Act, as amended, provides:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them . . . ."

We need not decide whether violations of the price discrimination provisions of § 3 of the Robinson-Patman Act are subject to all of the defenses provided in the case of price discriminations under the Clayton Act.

[7] The District Court indicated that the vagueness of the "unreasonably low prices" provision might give rise to constitutional difficulties, if such questions had to be faced. Cf. *United States* v. *L. Cohen Grocery Co.*, 255 U. S. 81; *Cline* v. *Frink Dairy Co.*, 274 U. S. 445. See Comment, 55 Mich. L. Rev. 845, 853–856. Be that as it may, it is worthy of note that the Department of Justice has never, so far as we have been able to determine, brought proceedings under this provision of § 3.

of the public authorities, except to the extent that violation of any of its provisions also constituted a violation of § 2 of the Clayton Act, and as such was subject to private redress under §§ 4 and 16 of that Act. In any event, in the absence of a much clearer indication of congressional intent than is present in these statutory provisions and their legislative history (*infra*, p. 380), we should not read the Robinson-Patman Act as subjecting violations of the "unreasonably low prices" provision of § 3 to the private remedies given by the Clayton Act.

Respondent calls our attention to the fact that the 1940 U. S. Code codifies § 3 of the Robinson-Patman Act as being among the "antitrust laws" embraced in § 1 of the Clayton Act. However, reference to the 1926 and 1934 Codes shows that the 1940 codification was a palpable error.[8] Moreover, this codification seems to us, for the

---

[8] In the 1926 U. S. Code, § 1 of the Clayton Act was codified in part as follows (15 U. S. C. § 12):

" 'Antitrust laws,' as used in sections 12 to 27, inclusive, of this chapter [the Clayton Act], includes sections 1 to 27, inclusive, of this chapter."

This codification was correct because §§ 1–27 of Title 15 were the Sherman Act, the Wilson Tariff Act (as amended) and the Clayton Act. The 1934 Code was identical and also correct.

The error occurred in the 1940 codification. The Robinson-Patman Act was enacted in 1936. In the 1940 Code the codification of § 1 of the Clayton Act was changed so that it read:

" 'Antitrust laws,' as used in sections 12, 13, 14–21, 22–27 of this title, includes sections 1–27 inclusive, of this title."

Sections 2, 3, and 4 of the Robinson-Patman Act had been codified as 15 U. S. C. §§ 21a, 13a and 13b, respectively. The codifiers partially recognized that these sections were not part of the Clayton Act by changing the figures "12 to 27" in the earlier codifications of 15 U. S. C. § 12 to read "12, 13, 14–21, 22–27." But the codifiers failed to make a corresponding change in the figures "1 to 27" appearing in the earlier codifications. The result is that the term "antitrust laws" as used in § 1 of the Clayton Act appears in the 1940 Code to include § 3 of the Robinson-Patman Act, codified as § 13a. The 1946 and 1952 codifications perpetuated this error.

reasons set forth in this opinion, to be manifestly inconsistent with the Robinson-Patman Act, and in such circumstances Congress has specifically provided that the underlying statute must prevail. Act of June 30, 1926, § 2 (a), vol. 1 U. S. C. (1952 ed.), p. LXIII; see *Stephan* v. *United States*, 319 U. S. 423, 426.

## II.

What appears from the face of the Robinson-Patman Act finds full support in its legislative history. The fair conclusions to be drawn from that history are (a) that § 3 of the Robinson-Patman Act was not intended to become part of the Clayton Act, and (b) that the section was intended to carry only criminal sanctions, except that price discriminations, to the extent that they were common to both that section and § 2 of the Clayton Act, were also understood to carry, *under the independent force of the Clayton Act,* the private remedies provided in §§ 4 and 16 of the Clayton Act. In other words, although price discriminations are both criminally punishable (under § 3 of the Robinson-Patman Act) and subject to civil redress (under § 2 of the Clayton Act), selling "at unreasonably low prices" is subject only to the criminal penalties provided in § 3 of the Robinson-Patman Act.[9] This is evident from the Conference Report on the bill, which states:

"SECTION 2

"The provisions of section 2 of the House bill [10] were agreed to without amendment by the Senate. . . . [I]t appears in the conference report as

---

[9] Read in context, the legislative excerpts quoted in the dissenting opinion indicate no more than that.

[10] The House bill was introduced by Representative Patman. H. R. 8442, 79 Cong. Rec. 9081. Shortly thereafter an identical bill was introduced in the Senate by Senator Robinson. S. 3154, 79 Cong. Rec. 10129.

section 2 of the bill itself, rather than as part of *the amendment to section 2 of the Clayton Act which is provided for in section 1 to the present bill.*

### "SECTION 3

"Subsection (h) of the Senate amendment . . . appears in the conference report as section 3 of the bill itself. It contains the operative and *penal provisions* of what was originally the Borah-Van Nuys bill (S. 4171).[11] While they overlap in some respects, they are in no way inconsistent with the *provisions of the Clayton Act amendment provided for in section 1.* Section 3 authorizes nothing which *that amendment* prohibits, and takes nothing from it. On the contrary, where only civil remedies and liabilities attach to violations of *the amendment provided in section 1,* section 3 sets up special prohibitions as to the particular offenses therein described *and attaches to them also the criminal penalties therein provided."* H. R. Rep. No. 2951, 74th Cong., 2d Sess., p. 8. (Italics added.)

Further excerpts from the legislative history, set forth in the margin,[12] also bear out the conclusions stated at the outset of this part of our opinion.

---

[11] Independently of the Robinson bill, Senators Borah and Van Nuys introduced separate price-discrimination bills. S. 3670, 80 Cong. Rec. 461; S. 3835, 80 Cong. Rec. 1194. These bills were later consolidated, S. 4171, 80 Cong. Rec. 3204, and ultimately the consolidated bill became § 3 of the Robinson-Patman Act.

[12] Representative Utterback, senior House Manager of the committee of conference, stated on the floor of the House (80 Cong. Rec. 9419):

"Section 3 of the bill sets aside certain practices therein described and attaches to their commission the criminal penalties of fine and imprisonment therein provided. It does not affect the scope or operation of the prohibitions or limitations laid down by *the Clayton Act amendment provided for in section 1.* It authorizes nothing

Finally, it is noteworthy, by way of epitomizing the conclusions to be drawn from the legislative history, that in 1950 Representative Patman (a coauthor of the Robinson-Patman Act) stated in testimony before a Subcommittee of the House Committee on the Judiciary (Hearing on H. R. 7905, 81st Cong., 2d Sess., Serial No. 14, Part 5, p. 48):

". . . it happens that section 3, the criminal section of the Robinson-Patman Act, was not, under the terms of that act, made an amendment to the Clayton Act. Moreover, section 3 of the Robinson-Patman Act has never been added to the list of laws designated as 'antitrust laws' in section 1 of the Clayton Act."

For the foregoing reasons, we hold that a private cause of action does not lie for practices forbidden only by § 3 of the Robinson-Patman Act. To the extent that such practices also constitute a violation of § 2 of the Clayton Act, as amended, they are actionable by one injured thereby solely under that Act. Since no such infringement of § 2 is alleged here, the complaint in this case was properly dismissed.

*Affirmed.*

---

therein prohibited. It detracts nothing from them. Most of the acts which it does prohibit lie also within the prohibitions of that amendment. In that sphere this section merely attaches to them its criminal penalties in addition to the civil liabilities and remedies already provided by the Clayton Act." (Italics added.)

Representative Miller, a House Manager of the committee of conference, later said "Section 3 is the Borah-Van Nuys amendment. . . . The first section of the bill as reported back here amends section 2 of the Clayton Act." When asked whether § 3 was "a part of the same act," Mr. Miller replied (80 Cong. Rec. 9421):

"Of course it is, *but it is not a part of the Clayton Act as amended by section 2* [Section 1 of the Robinson-Patman Bill]." (Italics added.)

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE, MR. JUSTICE BLACK, and MR. JUSTICE BRENNAN concur, dissenting.*

The question in these cases is whether a person injured by a violation of § 3 of the Robinson-Patman Act, 49 Stat. 1526, 15 U. S. C. § 13a, may sue the wrongdoer for treble damages and an injunction under §§ 4 and 16 of the Clayton Act, 38 Stat. 730, 15 U. S. C. §§ 15, 26. A *dictum* in *Bruce's Juices, Inc.* v. *American Can Co.,* 330 U. S. 743, 750, indicated that the action would lie; and *Moore* v. *Mead's Fine Bread Co.,* 348 U. S. 115, sustained a recovery on that theory, though the point now at issue was neither briefed nor considered.

Section 4 of the Clayton Act allows suits for treble damages for acts forbidden by "the antitrust laws." Section 16 allows relief by injunction for violations of "the antitrust laws." The Court holds that § 3 of the Robinson-Patman Act is not a part of "the antitrust laws" as used in the Clayton Act.

We disagree. The legislative history in our opinion shows that Congress intended to permit private actions to be brought for violations of § 3 of the Robinson-Patman Act.

It is true that § 1 of the Clayton Act defines "antitrust laws" as including, *inter alia,* the Sherman Act and the Clayton Act and that the Robinson-Patman Act did not in terms amend § 1. It is also true that § 3 of the Robinson-Patman Act does not in terms amend § 2 of the Clayton Act, while § 1 of the Robinson-Patman Act does. 80 Cong. Rec. 9414. The legislative history is further clouded by the fact that certain types of price discriminations are forbidden by both § 1 [1] and § 3 of the Rob-

---

*[NOTE: This opinion applies also to No. 69, *Safeway Stores, Inc.,* v. *Vance, post,* p. 389.]

[1] Section 1 of the Robinson-Patman Act amended and re-enacted § 2 of the Clayton Act.

inson-Patman Act. Suits for damages on account of these violations plainly are suits for damages under the "antitrust laws" within the meaning of the enforcement provisions of the Clayton Act. It is only when a violation of § 3 alone is involved that the issue we are concerned with here arises. Yet why allow suits for treble damages for price discrimination under § 2 and not allow them when the discrimination practiced is of the kind condemned by § 3? There is no suggestion that any such line was being drawn by the Congress. The emphasis on the restrictive effect of § 3 relates simply to its criminal sanctions, not to the remedial provisions with which we are presently concerned. When the Conference Report was being considered in the House, Representative Miller, a House Conferee supporting the bill, made the following statements (80 Cong. Rec. 9421):

> "The penalty of triple damages is the old law. In other words, we made no change in that particular provision of the Clayton Act. Section 3, which the gentleman from New York talks about, is the Borah-Van Nuys amendment, and that is the criminal section of this bill. The first part of the bill has nothing to do with criminal offenses. It deals primarily, in my opinion, with the authority of the Federal Trade Commission to regulate and enforce the provisions of section 2 of the Clayton Act, as amended. Section 3 in the bill is placed in an effort to make the criminal offense apply only to that particular section, and I believe that is a reasonable construction, if you will look at the bill.
>
> "Mr. MASSINGALE. There is no criminal offense involved for anything outside of what is contained in that section?
>
> "Mr. MILLER. In section 3.

"Mr. HANCOCK of New York. Is it not perfectly clear that any vendor who discriminates in price between purchasers is guilty of a crime and is also subject to triple damages to anyone who claims to be aggrieved?

"Mr. MILLER. That is true, but the criminal part is included in section 3 and section 3 only.

"Mr. HANCOCK of New York. But it is a part of the same act?

"Mr. MILLER. Of course it is, but it is not a part of the Clayton Act as amended by section 2. It ought to be, as far as that is concerned, if a seller willfully discriminates."

Yet § 3 as well as § 2 declares certain price discriminations unlawful; and suits for treble damages are as applicable to § 3 situations as to those under § 2, if words are to have their normal meaning.

During the discussion of the Conference Report in the Senate, Senator Vandenberg stated:

"Mr. President, I should like to ask the Senator from Indiana one or two questions about the conference report.

"The fact has been called to my attention that section 3 of the bill, as agreed upon in conference, makes certain discriminations punishable by fine and also subject to treble damages, while similar discriminations under section 2 (b) would be subject to rebuttal by showing, for instance, that a reduced price was made in good faith to meet an equally low price of a competitor. In other words, it is asserted to me that the defense allowed under section 2 (b) is not permitted under section 3, although the act or the offense would be the same." 80 Cong. Rec. 9903.

In reply, Senator Van Nuys, one of the Senate Conferees, did not contest the statement about civil and criminal penalties, but instead addressed his remarks to the contention concerning the defense:

> "I think the Senator is mistaken there. The proviso to which he refers is simply a rule of evidence rather than a part of the substantive law. If a prima-facie case is made against an alleged unfair practice, the respondent may rebut the prima facie [*sic*] case by showing that his lower prices were made in good faith to meet the prices of a competitor. That is a rule of evidence rather than substantive law." *Ibid.*

While those who favored the bill assumed that § 3 allowed treble damages, those opposed railed against it on that ground. Section 3 derived from an amendment offered by Senators Borah and Van Nuys and it was to it that the fire was directed. 80 Cong. Rec. 9420.

> "Mr. HANCOCK of New York. If a vendor is found guilty of discrimination as provided in this bill, is he subject to the aggrieved party for damages or has he committed a crime and subjected himself to penalty?
>
> "Mr. CELLER. If he violates the Borah-Van Nuys provision or the other provision of the bill he is subject to penalties of a criminal nature and has committed an offense.
>
> "Mr. HANCOCK of New York. Would he also be liable for triple damages?
>
> "Mr. CELLER. And he would also have to respond in triple damages under the provisions of the Clayton Act. Anyone aggrieved can sue."

The treble-damage provision of the Clayton Act was written into the law so as to provide incentives for private as well as governmental patrol of the antitrust field.

Not a word in the legislative history of the Robinson-Patman Act suggests that this special remedy was to be denied to § 3 actions and granted to those under § 2. The fair intendment seems to have been that § 3 was to be added to the body of "antitrust laws." The mechanical device used was an amendment to one section of the Clayton Act.[2]

In resolving all ambiguities against the grant of vitality to § 3, we forget that the treble-damage technique for law enforcement was designed as an effective, if not the most effective, method of deterring violators of the Act.

The House Committee on the Judiciary is entrusted by Congress with the preparation and publication of the Code. 1 U. S. C. § 202. That Committee construed § 3 of the Robinson-Patman Act as part of the antitrust laws, for it gave the section number 13a in the Code and provided in § 12 that the term "antitrust laws" "includes sections 1–27 of this title." That codification establishes "prima facie the laws of the United States," 1 U. S. C. § 204 (a), and the countermanding considerations relied on by the Court do not seem sufficiently persuasive to us to rebut that construction. It indeed accords with what we deem to be the prevailing sentiment in Congress at the time that § 3 became as much a part of the "antitrust laws" as the other provisions of the Robinson-Patman Act.

As the Court notes, it appears that the Department of Justice has never enforced the criminal provisions of § 3

---

[2] In determining the legislative intent, reliance can hardly be placed on statements of Representative Patman, made in 1950, *some 14 years after the passage of the Robinson-Patman Act*, that § 3 of the Act did not amend the Clayton Act. Hearings on H. R. 7905, 81st Cong., 2d Sess., Serial No. 14, Part 5, p. 48.

of the Robinson-Patman Act.   Because of the Court's holding that § 3 is not available in civil actions to private parties, the statute has in effect been repealed.   It is apparent that the opponents of the Robinson-Patman Act have eventually managed to achieve in this Court what they could not do in Congress.   We would reverse in No. 67 and affirm in No. 69.