**GERBER PRODUCTS COMPANY,**
Plaintiff,

v.

**BEECH–NUT LIFE SAVERS, Inc.,**
Defendant.

United States District Court
S. D. New York.
April 23, 1958.

Gilbert H. Weil, New York City, Melville Ehrlich, Washington, D. C., for plaintiff, Milton Handler, Alfred T. Lee, Stanley D. Robinson, Joshua F. Greenberg, New York City, of counsel.

Rogers, Hoge & Hills, New York City, for defendant, George S. Hills, Andrew J. Graham, Charles Donald Mohr, Mercer L. Stockell, William L. McGuire, William H. Ball, Jr., New York City, of counsel.

WEINFELD, District Judge.

This case centers about what the plaintiff labels a "price war" or a "war of attrition" but which the defendant characterizes as vigorous competition in its struggle for economic survival in the baby food products market in the State of California.

The complaint charges the defendant with attempting to monopolize the California market by unreasonable reduction in the price of its glass contained baby food product and various violations of the Robinson-Patman Act.[1]

The immediate matter before the Court is the plaintiff's motion for a preliminary injunction to compel the defendant to increase the prices charged by it in California by reinstating a price differential which existed between its products and those of the plaintiff prior to September 4, 1957. The motion is expressly confined to an alleged violation of Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act.[2] The parties have submitted voluminous affidavits containing charges and counter-charges as well as almost three thousand pages of depositions.

The plaintiff Gerber Products Company (hereafter sometimes referred to as "Gerber") and the defendant Beech-Nut Life Savers, Inc. (hereafter sometimes referred to as "Beech-Nut") process, pack and sell in interstate commerce strained and junior baby foods.[3] They sell to wholesalers, chain stores, cooperatives and other large purchasers.

The plaintiff is the largest manufacturer of baby foods in the United States having more than 47% of total national sales. Its sales are greater than the combined sales of its next two competitors, the defendant Beech-Nut which has about 21% and Heinz & Company which has about 16.5% of the national market. The three companies control close to 85% of the national market.

The defendant distributes other commodities in addition to baby foods whereas the plaintiff distributes only baby foods and related products. The volume of each in the baby food business is substantial. Plaintiff's total nationwide sales in 1957 were close to $110,000,000, whereas the defendant's total sales of all its products were in excess of $122,000,000.

Up to the late 1930's all producers of baby foods marketed their wares in tin containers. About that time Beech-Nut successfully marketed its product in glass containers. The innovation succeeded with the consuming public in the east, despite the higher price charged for the glass containers. In time, consumer demand east of the Mississippi compelled a shift from tin to glass and for the past decade or more glass has been, in this area, the only method of packaging and distributing baby foods. Gerber, Heinz & Company and Beech-Nut all sell their

1. The complaint alleges six separate claims as follows: Under the Robinson-Patman Act: price discrimination, [Section 2(a)]; discriminatory payments as compensation for services or facilities, [Section 2(d)]; furnishing services and facilities on a discriminatory basis, [Section 2(e)]; and selling at unreasonably low prices for the purpose of destroying competition and eliminating a competitor, [Section 3]. 15 U.S.C.A. §§ 13 (a, d, e), 13a. The Lanham Act claim charges false advertising in violation

of Section 43(a), 15 U.S.C.A. § 1125 (a) and another claim charges an attempt to monopolize in violation of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1 et seq.

2. 15 U.S.C.A. § 13(a).

3. Strained baby foods are strained sufficiently fine for feeding infants. Junior baby foods are for children who no longer require the finely strained food intended for infants.

glass contained products east of the Mississippi at substantially the same prices.

Despite the change in packaging east of the Mississippi, Gerber, which at all times had a national market for its product, continued to distribute in tin containers west of the Mississippi, including California.

In this case we are concerned with the situation in the State of California, which is Gerber's largest single market. Gerber has sold its product there since the late 1920's.

In 1949 Beech-Nut entered the California market with its glass contained product. From the time of its entry there its product, up to recent months, was sold at a higher price than Gerber's, generally at the same price as in the area east of the Mississippi. Except for California, Beech-Nut at no time sold in any other state west of the Mississippi.

Heinz & Company, like the plaintiff, sold on a nationwide basis but exclusively in glass containers. Its price in California was similar to that charged by Beech-Nut thus observing the same price differential with respect to Gerber's tin packed food.

Plaintiff asserts that the reason for the price differential between tin and glass is that it costs more to package, warehouse and distribute in glass than in tin. The defendant concedes that it costs a little more in glass but disputes that the disparity is as great as is urged by plaintiff.

Gerber over a substantial period has commanded on the average about 75% of the California market as against Beech-Nut's average of about 5%. Heinz & Company is the closest competitor to Gerber having on the average about 16% of that market.

The plaintiff concedes that the basic reason it has the major portion of the California market was the lower price of its product compared to the prices charged by the defendant and Heinz.

After the defendant moved into the California market, it made some progress until 1956 when despite an active advertising campaign and population growth, its sales volume and market share began to decline from a peak of 6.6%. The decline continued so that by July, 1957 the distribution in the California market for strained and junior baby foods by the three principal competitors, stood approximately as follows:

| Gerber | 73% |
| Heinz | 16% |
| Beech-Nut | 4.3% |

Despite the higher prices at which the defendant sold its product, it operated at a deficit because of the small sales volume.

According to the defendant, the deterioration of its competitive position was such that large chain stores, wholesalers and cooperatives were threatening to discontinue its product and several had already done so, and defendant charges that as its sales dropped Gerber's representatives and salesmen engaged in various high pressure and unfair practices to hasten its demise and eliminate it entirely from the California market—which plaintiff denies.

Beech-Nut management, after consultation with its sales representatives, advertising agency and marketing experts, concluded that it could recapture a share of its lost market and survive as a competitor in California only by reducing its prices to meet those charged by Gerber. A price reduction, defendant believed, would not only prevent extinction in California but the resulting increased sales volume would yield a profit.

Accordingly on September 4, 1957 Beech-Nut reduced its prices and at the same time put on an intensive advertising campaign announcing the price reduction. It brought down its price for glass contained strained baby food from $1.11 per dozen to $.96 per dozen and for junior foods from $1.59 per dozen to $1.16½ per dozen. This completely eliminated the existing differentials between its prices and Gerber's.

Soon thereafter Heinz & Company also reduced its price of baby food in glass

jars to equal those of Gerber and Beech-Nut.

On October 11, 1957 Gerber dropped its price to 86 cents per dozen for strained foods and 95½ cents per dozen for junior foods, asserting that unless the differential were restored, glass containers would be preferred by the consumer.

Beech-Nut, contending that its only means of survival in the California market was to meet the price of Gerber, followed suit and on October 11, 1957 again dropped its prices to meet Gerber's. Heinz again followed suit and since October 11, 1957 Gerber, Beech-Nut and Heinz have been selling at the same price.

Beech-Nut charges that Gerber's reduction on October 11th was a retaliatory measure; that it knew, in order to survive in California, the defendant would be compelled to meet plaintiff's reduced prices even though it meant selling at a loss—to which Gerber replies that only by restoring the price differential between tin and glass could it compete with Beech-Nut.

In seeking preliminary injunctive relief Gerber charges Beech-Nut with territorial price discrimination—in violation of Section 2(a) of the Robinson-Patman Act. It urges that Beech-Nut is selling at unreasonably low prices for the purpose of destroying competition and eliminating plaintiff as a competitor; that its action is causing irreparable injury which warrants relief in advance of a trial.

At the outset it should be noted that neither party makes any substantial claim that the food content of its product is superior to or more costly than the other's. However, each urges, and has stressed in its advertising, that its container has qualities not possessed by the other. Thus the hard core of the controversy revolves about the packaging of their respective products—tin against glass containers.

It should be emphasized what this case does not involve. It does not involve a price differential granted by Beech-Nut to any of its buyers in discrimination against other buyers in California. The complaint here is by plaintiff, a competitor of the defendant who sells to the same trade as the defendant in that area.

In broad outline, Gerber charges that the reduction by Beech-Nut of its prices in California without a similar reduction east of the Mississippi is in violation of Section 2(a) of the Clayton Act. The substance of its charge is that Beech-Nut by bringing its prices in line with the plaintiff's has reduced them to an unreasonably low level which neither plaintiff nor Heinz can meet without substantial losses;[4] that losses sustained by defendant on its sales at lower prices in California are financed by profits arising from higher prices charged by it east of the Mississippi, as well as by defendants financial reserves and power; that defendant's actions not only have the effect, but are motivated by an intent, to injure plaintiff competitively.

The defendant on the other hand contends that the sole purpose of the reduction was economic survival; that the price differential had in effect priced it out of the baby food market in California; that the price reduction was the only effective means by which it could recapture its share of the market, to increase sales volume and to survive economically in the baby food market in California.

Finally, defendant urges that its action, instead of lessening competition in California, has stimulated vigorous competition. It points to the fact that Heinz & Company, which like the plaintiff complains of the defendant's act, has, since all three are selling at parity, actually increased its share of the market.

---

4. Plaintiff, while recognizing that under Nashville Milk Co. v. Carnation Co., 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed.2d 340, it may not maintain a claim for violation under Section 3 of the Robinson-Patman Act, 15 U.S.C.A. § 13a, contends that defendant's action is evidence to support its charge of a purpose to eliminate it as a competitor.

In sum, Beech-Nut contends, assuming arguendo, that its action in reducing prices in California may be considered discriminatory against its buyers east of the Mississippi, it has, under Section 2(b) of the Clayton Act,[5] met its burden of justification—a good faith attempt to meet Gerber's lower price.[6]

Gerber counters that Section 2(b) is not available to Beech-Nut as a defense. It argues that despite higher prices for glass packed baby food many consumers prefer to buy it because of a belief (right or wrong) that its contents are better preserved and of greater nutritional value—that in effect, it is a premium product which commands a higher price in competition with tin. The substance of its position here is that marketwise the products are not comparable and that Beech-Nut's reduction was not meeting plaintiff's price but undercutting it. In short, that the elimination of the differential by Beech-Nut gives the latter an unfair competitive advantage, since with prices the same for tin and glass Beech-Nut would run away with the market and would soon eliminate the plaintiff as a competitor in the field.

Plaintiff relies on Matter of Anheuser-Busch,[7] in which the Federal Trade Commission held that if the consumers have demonstrated a willingness to pay more for the product of one manufacturer, than they will pay for the similar product of another manufacturer, the consumer preferred product is a premium product and Section 2(b) is not a defense since in that circumstance a price reduction is not meeting but undercutting competition because the products are not comparable.

The defendant disputes that glass contained food, because it has sold at a higher price, may be considered a premium product. It emphasizes that at no time from its entry in the California market in 1949 has its higher priced product commanded more than 6.6% of the total market as against the plaintiff's more than 70%.

The defendant contends that some consumers prefer tin at any price; a limited number prefer glass at any price; but most prefer glass to tin only when sold at the same price as tin; and that the facts of this case demonstrate that in California the vast majority of consumers refuse to pay a premium price for glass.

In addition to urging the alleged premium aspect of the defendant's packaging, the plaintiff contends that the defendant further undercut plaintiff's price by offering more food content in the junior size[8] and greater discounts in the instance of quantity purchases.[9]

As to the one ounce difference in the contents of the junior size product sold by Beech-Nut and that sold by Gerber, affidavits submitted by retailers, if given credence, indicate that the differential is of no significance, insofar as the consumer is concerned.

As to discounts permitted by Beech-Nut on 10,000 lb. purchases as against Gerber's 40,000 lb. allowance, the record is not quite clear as to whether Beech-Nut has consistently allowed this from the time of its entry into the California

---

5. 15 U.S.C.A. § 13(b).

6. The factual situation advanced by the defendant in justification makes it unnecessary to consider plaintiff's contention based on Samuel H. Moss, Inc., v. Federal Trade Commission, 2 Cir., 148 F.2d 378 and Federal Trade Commission v. Standard Brands, 2 Cir., 189 F.2d 510, that once territorial price differences have been established, anti-competitive impact in violation of Section 2(a) is presumed.

7. FTC Dkt.No.6331, CCH Trade Reg.Rep. ¶26,705 (1957).

8. The defendant's junior foods contain one ounce more than plaintiff's.

9. The defendant allows its maximum quantity discount on the basis of 10,000 lb. shipments of both strained and junior foods whereas the plaintiff allows it only on shipments of 40,000 lb. and hence plaintiff urges that the defendant's prices are now two cents and two and a half cents lower per dozen than plaintiff's prices.

market or initiated it when it put into effect the price reduction.

Thus there are challenged issues of fact on a number of items, including charges and countercharges of unfair practices by representatives of each of the parties.

When all is said and done, one comes back to the fundamental question—was the price reduction made, as Beech-Nut contends, in good faith to meet Gerber as a competitor and to survive in the market or was it, as Gerber contends, a ruthless action the effect of which is to injure it competitively and drive it out of the market by selling at a loss, subsidized with profits from its sales in other areas of the country.

█ The preliminary relief if granted would require the Court in advance of a trial of the disputed issues to compel the defendant to increase its prices in California by reinstating a so-called historical differential or to require the defendant to reduce its prices to its customers east of the Mississippi. This, of course, is a rather drastic remedy, which may be granted under Section 16 of the Clayton Act [10] only where "the danger of irreparable loss or damage is immediate". The plaintiff urges that it has met the required test. It states that since the price reduction went into effect it has suffered a reduction of profits of $150,-000 per month by reason of the lower price at which it now sells its products. Apart from this and loss of sales volume, plaintiff contends there is incalculable damage in the loss of shelf space in the stores of retailers which is deemed a most important advertising medium; that as customers become used to buying Beech-Nut products as against Gerber's, they become more accustomed to glass containers; that in the event the differential is ultimately restored, plaintiff's good name and good will will have been

irreparably injured since many customers will feel that plaintiff's product was originally priced unreasonably high. In sum, plaintiff contends that it has come within the doctrine of "balance of hardship" enunciated in the Hamilton Watch case,[11] and is entitled to an injunction at this time.

█ Undoubtedly the present situation is injurious to the plaintiff as it is to the defendant. Indeed the plaintiff contends that with the two reductions in price neither it nor the defendant can sell at current prices without incurring losses. However, the mere fact of loss of profits or economic injury which results from a competitive situation does not, in and of itself, entitle one to relief. The last price decrease on October 11, 1957 was initiated by the plaintiff on the ground that it was entitled to preserve the price differential theretofore maintained by the defendant. It, like the defendant, did not grant a similar reduction to purchasers of its tin products in areas outside of California. Under the circumstances, the plaintiff can complain of the losses consequent on its October 11th price reduction only if it had a right to the protection of the price differential as against glass. Otherwise, the defendant could justify its October 11th price reduction as well as the earlier elimination of the differential on the ground of good faith meeting of competition.

In short, the defendant's action may be condemned only if its drop in prices was not to meet, but to beat, competition.[12]

This crucial issue in turn hinges on whether the defendant's product is a premium product which is sharply contested.

Impressive affidavits have been presented by merchandising men and those who have had actual experience in trying

10. 15 U.S.C.A. § 26.

11. Hamilton Watch Co. v. Benrus Watch Co., Inc., 2 Cir., 206 F.2d 738, 740.

12. Cf. Standard Oil Co. v. Federal Trade Commission, 340 U.S. 231, 249, 71 S.Ct.

240, 95 L.Ed. 239, with Balian Ice Cream Co. v. Arden Farms Co., 9 Cir., 231 F.2d 356, 367.

to sell Beech-Nut's products that its higher price was the reason it faced elimination from the California market, despite plaintiff's contention that it was due to inefficient marketing methods. Indeed plaintiff itself concedes that the preference for tin cannot be separated from price. The proof of market behavior offered by the defendant would indicate that the consumer's resistance to paying the premium price for glass packaging casts serious doubts on its status as a premium product.

■ The fact that the defendant in its advertising "puffs" the alleged virtue of glass containers does not make it a premium product as against tin—any more than plaintiff's advertising claim of unique qualities of tin make its product a premium product. The ultimate test, it seems to me, is whether a substantial part of the public is prepared to pay a greater price for the glass contained product.

With increasing standardization of products generally, consumer appeal through attractive packaging has become a developing aspect of competitive activity. To impose on the more attractive package a disability to meet the price at which it is acceptable to the consumer may of itself chill this developing area of competition. Other considerations not on this application sufficiently persuasive to the Court must be found before a disability to meet the lower price can be established under the law.

A determination upholding the plaintiff's contention that the defendant's glass contained wares is a premium product is bound to have an impact upon marketing and packaging practices in the California area. The consequences which follow in the wake of such a determination seriously effects the consuming public as well as the immediate litigants.

Apart from a substantial doubt that the papers clearly establish the premium quality of the defendant's product, I am of the view that the plaintiff has not on this voluminous record made that showing of irreparable injury or that "the balance of hardship dips decidedly toward the plaintiff" [13] so as to require in advance of trial the granting of the extraordinary relief it seeks.

Plaintiff's loss of sales volume compared to its share of the total California market is not substantial. It still retains the major portion of that market having close to 70%—and its sales continue far in excess of both Beech-Nut and Heinz & Company—its two closest competitors.

According to the deposition of Gerber's president, it still has the same or a greater number of outlets than it had prior to the price reduction; and it still has the majority of shelf space.

The plaintiff, as is the defendant, is possessed of vast financial resources and each has great staying power in the intense competitive struggle in which they are now engaged. Plaintiff's position in the California market is dominant; far and away ahead of its closest competitors. It remains the largest distributor of baby foods both in California and throughout the country. The defendant's market position in California is relatively small compared to that of the plaintiff and its distributes baby foods only east of the Mississippi and in California. There is no persuasive indication on the present state of the record of any reasonable likelihood that there would be a substantial lessening of competition or that the plaintiff would be eliminated as a competitor.

■ It may be that the plaintiff is remitted to measures of competitive retaliation which however costly are the consequences of vigorous competition against which there is no insulation under laws concerned with the preservation of competition. As the Supreme Court has said:

"  *  *  *  There is nothing to show a congressional purpose, *  *  * to compel the seller to choose only between ruinously cut-

---

13. Hamilton Watch Co. v. Benrus Watch Co., Inc., 2 Cir., 206 F.2d 738, 740.

ting its prices to all its customers to match the price offered to one, or refusing to meet the competition and then ruinously raising its prices to its remaining customers to cover increased unit costs. There is, on the other hand, plain language and established practice which permits a seller, through § 2(b), to retain a customer by realistically meeting in good faith the price offered to that customer, without necessarily changing the seller's price to its other customers. * * *

"We may, therefore, conclude that Congress meant to permit the natural consequences to follow the seller's action in meeting in good faith a lawful and equally low price of its competitor." [14]

The Court on this motion is not required to determine the ultimate issues as upon a trial. However, the defendant, as of this stage of the record, has advanced sufficient under its Section 2(b) defense to warrant a trial of the contested issues rather than a determination upon conflicting affidavits and further has established that the balance of hardship weighs in its favor.

If plaintiff should eventually prevail there is no question but that the defendant would be well able to respond in money damages to meet not only the loss of profits by reason of reduced sales but for loss of good will or other items which a court may find resulted from the defendant's conduct.[15]

On the other hand, if the price differential is ordered reinstated there can be little doubt that the defendant will be more adversely effected than the plaintiff —and may well face elimination from the California market with a consequent substantial lessening of competition in that area.

The Court has carefully considered Porto Rican American Tobacco Co. of Porto Rico v. American Tobacco Co., 2 Cir., 30 F.2d 234 and the other territorial price discrimination cases which plaintiff's counsel has so earnestly pressed. However, in each the predatory practices of the defendant with their consequent competitive injury upon smaller and weaker competitors *were clearly found as fact only after a full trial* and no meritorious defense under § 2(b) of the Act was established. Here the justification for defendant's acts and their likely consequences are the subject of heated controversy.

Under all the circumstances the plaintiff's papers neither preponderate in its favor nor show a balance of hardship in its favor so as to justify the granting of the motion for preliminary injunctive relief and accordingly it is denied.

Settle order on notice.

---

14. Standard Oil Co. v. Federal Trade Commission, 340 U.S. 231, 250, 71 S.Ct. 240, 250, 95 L.Ed. 239

15. Cf. Bigelow v. RKO Radio Pictures, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652.