**GOLD FUEL SERVICE, INC., a Corporation of New Jersey, Appellant,**

v.

**ESSO STANDARD OIL COMPANY, a Corporation, of Delaware.**

**No. 13730.**

United States Court of Appeals
Third Circuit.

Argued Feb. 6, 1962.

Decided July 24, 1962.

**62**

Sam Weiss, Orange, N. J. (Pollis, Williams & Pappas, Elizabeth, N. J., on the brief), for appellant.

Burtis W. Horner, Newark, N. J. (Stryker, Tams & Dill, Newark, N. J., Charles M. Welch, Newark, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This appeal has been taken from an order granting summary judgment for the defendant in a civil antitrust suit. The appellant, Gold Fuel Service, Inc., had sued Esso Standard Oil Co. for damages said to have been caused by illegal action of Esso in the course of the competition of the parties to sell fuel oil to two associated enterprises, Cooper Alloy Corp. and Stainless Engineering and Machine Works, which we shall designate together as Cooper-Stainless.

Appellant predicates its claim upon three separate provisions of the federal statutes. Its first contention is that a civil cause for violation of an "antitrust law" arises out of Esso's sale of fuel oil in competition with appellant at an unreasonably low price in violation of Section 3 of the Robinson Patman Act, 15 U.S.C.A. § 13a. However, as a matter of law the contention that a civil antitrust claim can arise in this way is contrary to the holding of the Supreme Court in Nashville Milk Co. v. Carnation Co., 1958, 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed.2d 340. Therefore, an inferior federal court must reject this theory of liability.

Appellant also asserts conventional claims under Section 1 and Section 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2. Under Section 1, it is alleged that Esso conspired with other producers of fuel oil to fix prices for the direct sale of fuel oil to Cooper-Stainless and thereby to deprive Gold Fuel of its principal customer, all in restraint of interstate commerce. Under Section 2, it is contended that Esso alone undertook to eliminate the competition of Gold Fuel in an attempt to monopolize an area of interstate commerce.

We first consider the state of the record with reference to the conspiracy claim under Section 1. The complaint alleged in general terms that Esso and other producers agreed to fix the prices

of fuel oil they offered Cooper-Stainless at levels below those at which Gold Fuel, an independent distributor and middle-man, which long had supplied the needs of Cooper-Stainless, could buy and deliver the commodity. Gold Fuel's position was made more explicit in its answer to Esso's demand that the amended complaint be made more definite. In that submission Gold Fuel said:

"At the time that Esso submitted its bid to the consumers Cooper and Stainless at a price lower than that at which the plaintiff distributor was able to purchase for resale to Cooper and Stainless, two other major suppliers, Cities Service Oil Company and Sinclair Refining Company, submitted bids to Cooper and Stainless, at prices which were also lower than that at which the plaintiff was able to purchase for resale to Cooper and Stainless. It is the contention of the plaintiff that the parallel actions of Cities Service, Sinclair and Esso purposefully coincided and were the result of pre-arrangement and understanding by and among Esso, Cities Service and Sinclair, and thus was the result of a combination and conspiracy among them to restrain the trade of the plaintiff with Cooper and Stainless."

Thereafter, Esso moved for summary judgment, supporting its motion with several affidavits. Particularly note-worthy are the affidavits of senior officers of the consumer Cooper-Stainless to the effect that, dissatisfied with Gold Fuel's prices, Cooper-Stainless had invited Esso and others to bid on its requirements and that Esso had responded with a bid of 10.38 cents per gallon for No. 2 fuel oil in the large quantities required by Cooper-Stainless, as contrasted with a bid of 11.4 cents per gallon by Gold Fuel and 10.2 cents by a rival producer. One affiant, who was the purchasing agent of Cooper-Stainless, also deposed that he asked Esso to meet the low 10.2 cents bid, that Esso agreed to this proposal and that the contract was then awarded to it. In addition, one of Esso's affidavits was supported by a document sworn to be a true copy of Esso's actual original bid as submitted to Cooper-Stainless. This bid read in part as follows:

"We would propose to deliver to your Hillside plant Esso Heating Oil Medium (#2 fuel oil) in tank transport quantities of approximately 4600 gallons. Deliveries in such quantities would be billed at the posted price in effect on date of delivery—exclusive of any applicable taxes—f. o. b. our Linden terminal. For your reference, today's price of Esso heat Medium is 10.05¢ per gallon, f. o. b. Linden, with current freight at .33¢ per gallon; thus your total delivered cost today would be 10.38¢ per gallon."

Gold Fuel's own affidavit in opposition to the granting of summary judgment recognized that Esso's bid of 10.38 cents was in fact based on its fluctuating daily posted prices and that these prices were open offerings to the trade published in a trade paper, the Journal of Commerce. Gold Fuel's affidavit also conceded that the posted price was an f. o. b. price and that a supplier would normally charge an additional .33¢ per gallon as a delivery charge.

In March 1960, Judge Morrill heard the parties on the motion for summary judgment. The record of that hearing shows the following colloquy between the court and counsel for Gold Fuel:

"The Court: * * * if this case is a blank stab in the dark with the idea that 'maybe I will find something if I get a lot of information from the other side and then it will all relate back to the suit I brought' that is one thing; if it is brought in good faith because you have a basis for something, and want to interrogate further under discovery procedure, that is perfectly all right.

"Mr. Weiss: Well, sir, we have at best a meager basis in fact or, in fact,—

"The Court: What do you say about the conscious parallelism doc-

trine, what have you got here on that?

"Mr. Weiss: All right. Actually, as of this moment, not a thing, sir, nothing. I make that clear."

■ Because of the illness and untimely death of Judge Morrill nothing more was done with reference to the motion for summary judgment for a year. The case was reassigned on March 30, 1961, to Judge Wortendyke, who subsequently granted summary judgment for the defendant. The quoted colloquy with Judge Morrill is significant because it shows that, after conceding that it had no evidence except the fact of low and ultimately identical bidding by several producers to support its claim for conspiracy, Gold Fuel allowed more than a year to pass without undertaking to discover whether there was anything else to support its claim. Indeed, even on this appeal Gold Fuel does not assert that it has any evidence that Esso made its initial bid even with knowledge of what other producers had bid or were about to bid, or that it reduced that bid for any reason other than the request of Cooper-Stainless that Esso meet a lower bid made by a competitor.

Recently, in Delaware Valley Marine Supply Co. v. American Tobacco Co., 3 Cir. 1961, 297 F.2d 199, cert. denied, 1962, 369 U.S. 839, 82 S.Ct. 867, 7 L.Ed. 2d 843, we concluded that even consciously parallel action by manufacturers of cigarettes in dealing with a prospective buyer did not supply a sufficient basis for submitting the question of preconcert to the jury, absent attendant circumstances making it unlikely that these parallel courses of action had resulted from the exercise of independent judgment by each manufacturer. Here, we think the plaintiff has given no indication that it could show a basis for a logical inference of preconcert predicated on conscious parallelism. This omission is fatal to the plaintiff's case even before trial, at least where uncontradicted affidavits and other documentary material submitted on motion for summary judgment, if true, provide a conclusive negation of the generally pleaded conspiracy claim, and plaintiff has failed to take advantage of ample opportunity by discovery or otherwise to contradict defendant's showing.

■ It remains to consider the claim that Esso was attempting to monopolize an area of commerce by bidding for the Cooper-Stainless business at a price below Gold Fuel's cost with the intention of driving that independent supplier out of business. Price reduction in a competitive situation is not a wrong in itself. It can become a violation of Section 2 of the Sherman Act only if shown to be motivated by a specific intent to drive a competitor or competitors from the field. Cf. Times-Picayune Publishing Co. v. United States, 1953, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277. The appellant here has conceded that it has no evidence of such intention except an inference it would draw from the fact that Esso's ultimate bid was less than what it would cost appellant and other middlemen to purchase and deliver the commodity in question. This is not, in our view, a permissible inference. If allowed, it would make every bid lower than a competitor's cost a sufficient basis for a finding of attempted monopoly. Moreover, appellant does not claim that there is an issue of fact as to the truthfulness of the sworn statements of Cooper-Stainless that it invited bids of Esso and others in an effort to obtain fuel oil cheaper than Gold Fuel had been willing or able to sell it, or that the final reduction of Esso's bid from 10.38 cents to 10.2 cents was in response to the prospective purchaser's request that Esso meet another competitive bid. This unchallenged indication of normal competitive motivation is in itself a negation of the inference of monopolistic purpose which Gold Fuel would draw. Cf. Delaware Valley Marine Supply Co. v. American Tobacco Co., supra.

■ In the light of appellant's failure to give any indication that it can carry its burden of proving an intention to eliminate competition even after ample

time for full discovery, the granting of summary judgment against the Section 2 claim was proper. Cf. Dollac Corp. v. Margon Corp., D.N.J. 1958, 164 F.Supp. 41, 64 aff'd, 3d Cir. 1960, 275 F.2d 202.

For these reasons the judgment will be affirmed.