**WIRE MESH PRODUCTS, INC.**

v.

**WIRE BELTING ASSOCIATION, the Arbee Corporation, Hoyt Wire Cloth Company, Wiremation Industries, Inc., George B. Gaul, and Alexander D. Lumsden.**

Civ. A. No. 77–505.

United States District Court,
E. D. Pennsylvania.

Aug. 25, 1981.

Louis Podel, Levy Associates, Philadelphia, Pa., for plaintiff.

E. Harris Baum, Philadelphia, Pa., for Wire Belting Ass'n.

Tyson W. Coughlin, Philadelphia, Pa., for Arbee, Hoyt, Wiremation, Gaul and Lumsden.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

█ Summary judgment has been aptly described as a "drastic weapon"[1] which should be used "sparingly"[2] since it bars litigants from presenting their case to a jury. Particularly in antitrust cases,[3] where intent and motive are frequently at issue, proofs are largely in the hands of alleged conspirators with a plot "thickened" by hostile witnesses.[4] Nevertheless, Fed.R. Civ.P. 56 "should not be read out of antitrust cases,"[5] for it provides courts with a useful tool to avoid needless litigation and shields defendants from the burden and costs associated with defending against a meritless claim.[6] The party resisting a motion for summary judgment may not rest upon the mere allegations of his pleading; his response must set forth *specific facts* showing that a genuine issue for trial exists.[7] Absent such showing, the motion may be granted. In the case at bar, plaintiff, resisting defendants' motion for summary judgment, has failed to meet this burden.

In the complaint, plaintiff, Wire Mesh Products, Inc., alleged that defendants, the Arbee Corporation, Hoyt Wire Cloth Company, George B. Gaul, Alexander D. Lumsden and Wiremation Industries, Inc., herein collectively referred to as "Wiremation defendants"[8] and the Wire Belting Association (Association), a trade group, engaged in conspiratorial pricing schemes aimed at driving plaintiff out of business. Specifically, plaintiff alleges that the Wiremation defendants engaged in unfair competition and violated applicable antitrust laws by bribing and threatening plaintiff's customers and engaging in predatory pricing and price discrimination with the intent of driving plaintiff from the market. Plaintiff further complains that all defendants vio-

1. *Hollinger v. Wagner Mining Equipment Co.*, 505 F.Supp. 894, 896 (E.D.Pa.1981).

2. *Tose v. First Pennsylvania Bank*, 648 F.2d 879 (3d Cir. 1981), *Harold Friedman, Inc. v. Kroger*, 581 F.2d 1068, 1080 (3d Cir. 1978).

3. *Poller v. CBS*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

4. *Fortner Enterprises, Inc. v. United States Steel Corp.*, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969).

5. *First National Bank v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), *Harold Friedman, Inc. v. Kroger*, 581 F.2d at 1080.

6. *Farnell v. Albuquerque Publishing Co.*, 589 F.2d 497 (10th Cir. 1978), *Chuy v. Philadelphia Eagles*, 407 F.Supp. 717 (E.D.Pa.1976).

7. Fed.R.Civ.P. 56(e) (emphasis added). *Pitt v. Leeds & Northrup Co.*, No. 80–2852 (E.D.Pa. July 21, 1981), *Altemose Construction Co. v. Building & Construction Trades Council*, 443 F.Supp. 492 (E.D.Pa.1977).

Plaintiff may choose to use affidavits, depositions, interrogatories or admissions to show a genuine issue of material fact. *See Burke v. Leader Dogs for the Blind*, 516 F.Supp. 1374, 1375 n.3 (E.D.Pa.1981).

8. At the time the complaint was filed, Hoyt was a wholly owned subsidiary of Arbee Corporation. Hoyt, in turn, owned a controlling interest in Wiremation Industries. George B. Gaul was president of Arbee and Alexander D. Lumsden was executive vice president of Wiremation. Subsequently, the assets of Hoyt and Wiremation were sold to Lumsden Corporation, owned by Mr. Lumsden.

lated Sections 1 and 2 of the Sherman Act[9] by tacitly agreeing to stabilize prices and monopolize the sale of wire belting in the United States. Part of defendant's illicit agreement purportedly included the formation of the defendant Association, designed as a "clearing house" for the unlawful exchange of information. Finally, plaintiff adds a pendent state claim against Wiremation for tortious interference with contractual rights.

The Robinson-Patman Act[10] provides in relevant part that

> [i]t shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of *like grade and quality.*

Wiremation defendants argue that plaintiff, to withstand their motion for summary judgment, must but has not adduced sufficient evidence that the belts sold to plaintiff's proposed customers were of a "like grade and quality" as the ones sold by defendants to other parties. In fact, a cofounder of plaintiff admitted in deposition testimony that, within this industry, the variety of marketed wire belts covered "an infinite range" and that customers dictated the desired specifications "seventy percent" of the time.[11] He also concurred with the statement that the industry does not produce "standard products"[12] and that Wiremation's products "varied".[13]

Plaintiff's failure to sustain its burden to oppose Wiremation's motion can be attributed to its failure to comply with the requirements of Fed.R.Civ.P. 56(e). For example, plaintiff argues that the owner of Wiremation Industries, Inc., defendant Alexander Lumsden, made it "common knowledge" that he would drive plaintiff out of business. Plaintiff further states that it "believes"[14] that defendants engaged in specified practices violative of the antitrust laws and that it "believes" that defendants acted with ill will.[15] Merely resting upon allegations in the complaint and relying upon "beliefs" clearly will not suffice to withstand a motion for summary judgment. Apparently misapprehending the distinction between summary judgment and a motion to dismiss, plaintiff repeatedly refers simply to the allegations in the complaint as well as "beliefs" unsupported by facts.

In fact, the only evidence which plaintiff has adduced regarding defendants' argument that the wire belting industry does not produce products of a "like grade and quality" is paragraph eleven of Enright's affidavit, which speculates that wire belts "can be" standardized. Affidavits based upon such unsupported speculation may, however, be disregarded.[16] This rule applies to all types of cases, including antitrust.[17] Notwithstanding a voluminous amount of discovery, plaintiff has failed to support, with any evidence of record, its assertion that standards in the wire belt industry exist.

**9.** 15 U.S.C. §§ 1, 2.

**10.** 15 U.S.C. § 13(a). (emphasis added).

**11.** Deposition of John E. Enright, III, at 14.

**12.** *Id.* at 18, 24. *See also* Deposition of Alexander Lumsden, 317–24 and Lumsden Affidavit, ¶ 5.

**13.** Plaintiff's answer in opposition to motion for summary judgment by all defendants at 2.

**14.** *Id.*

**15.** *Id.*

**16.** *Gatling v. Atlantic Richfield Co.,* 577 F.2d 185, 188 (2d Cir.), *cert. denied,* 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1978); *Carey v.*

*Beans,* 500 F.Supp. 580 (E.D.Pa.1980), *aff'd,* 659 F.2d 1065 (3d Cir. 1981).

**17.** *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.,* 627 F.2d 919, 928 (9th Cir. 1980) (party resisting motion must come forward with more than speculation to raise an issue of material fact); *Joseph Walsh Tire Co., Inc. v. B. F. Goodrich Co.,* No. 73–1210 (E.D.Pa. June 2, 1981) (movant not entitled to summary judgment on Robinson-Patman Act claim where affidavits filed in support thereof were predicated upon an assumption); *Fimex Corp. v. Barmatic Products Co.,* 429 F.Supp. 978, 981 (E.D.N.Y.), *aff'd,* 573 F.2d 1289 (2d Cir. 1977) ("mere assertion" in an affidavit by plaintiff's officer is insufficient to defeat defendant's motion).

Defendants, having shown by Enright's deposition and Lumsden's affidavit that the wire belting industry does not manufacture goods of "like grade and quality" has satisfied its burden on the motion for summary judgment.[18] Plaintiff has not shown a genuine issue of material fact as to this issue. Defendants' motion for summary judgment on this claim, therefore, will be granted.

■ Likewise, Wiremation defendants' motion for summary judgment will be granted as to plaintiff's claim under Section 3 of the Robinson-Patman Act,[19] which provides in relevant part that

[i]t shall be unlawful for any person engaged in commerce, . . .

to sell, or contract to sell, goods in any part of the United States at prices lower than those exacted by said person elsewhere in the United States for the purpose of destroying competition or eliminating a competitor in such part of the United States; or, to sell, or contract to sell, goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor.

Indisputably, this section does not provide plaintiff with a private cause of action.[20]

Additionally, all defendants move for summary judgment on Count Two, which alleges generally that the Wiremation de-

fendants conspired *inter se* to fix and control the price of wire belts, to create a monopoly, and to suppress competition. Moreover, plaintiff charges that, in an effort to succeed in reaching their or its illicit goal, Wiremation defendants created the Association and used it as a "clearing house" to exchange illegal information and stabilize prices.

Moving for summary judgment on these Sherman Act claims, the Association argues and the unrebutted evidence demonstrates that no discussion occurred at its quarterly meetings[21] with regard to marketing, customers, product lines, bidding prices or price;[22] that the Association members could use the formerly mandatory[23] monthly sales reports only for broad statistical purposes;[24] and that manipulating the statistics in a manner which would allow members to discern specific price information regarding other members was a "mathematical impossibility".[25]

Against this factual background, plaintiff argues that its allegations "*if proven . . .* would violate both Section 1 and 2 of the Sherman Act".[26] However, this statement, unsupported by legal authority or evidence of record, and plaintiff's naked allegation that it "*believes* that it was severely harmed"[27] by defendants' conduct, once

---

**18.** *F.T.C. v. Borden Co.*, 383 U.S. 637, 644–46, 86 S.Ct. 1092, 1097–98, 16 L.Ed.2d 153 (1966) (physical identity), *Fred Meyer, Inc. v. F.T.C.*, 359 F.2d 351, 359 (9th Cir. 1966), *rev'd on other grounds*, 390 U.S. 341, 88 S.Ct. 904, 19 L.Ed.2d 1222 (1968) (commercial identity or fungibility), *Central Ice Cream Co. v. Golden Rod Ice Cream Co.*, 184 F.Supp. 312, 319 (N.D.Ill.1960), *aff'd*, 287 F.2d 265 (7th Cir.), *cert. denied*, 368 U.S. 829, 82 S.Ct. 50, 7 L.Ed.2d 32 (1961) (purchaser dictated product specifications from supplier will not give rise to claim for "like grade and quality"), *Atalanta Trading Corp. v. F.T.C.*, 258 F.2d 365, 371 (2d Cir. 1958) (common sense similarity between the two products).

**19.** 15 U.S.C. § 13a.

**20.** *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed.2d 340 (1958), *Janich Brothers, Inc. v. American Distilling Co.*, 570 F.2d 848, 854, n. 5 (9th Cir.), *cert. denied*, 439 U.S. 829, 99 S.Ct. 103, 58 L.Ed.2d 122

(1978), *Gold Fuel Service, Inc. v. Esso Standard Oil Co.*, 306 F.2d 61, 62 (3d Cir. 1962), *cert. denied* 371 U.S. 951, 83 S.Ct. 506, 9 L.Ed.2d 500 (1963), *Thomas v. Amerada Hess Corp.*, 393 F.Supp. 58, 77 (M.D.Pa.1975).

**21.** Deposition of Peter Miranda, secretary of the Association, at 19 July 22, 1980).

**22.** *Id.* at 29, 30.

**23.** Deposition of Peter Miranda at 36 (July 23, 1980).

**24.** *Id.* at 24.

**25.** *Id.* at 24.

**26.** Plaintiff's answer in opposition to motion for summary judgment by all defendants at 4.

**27.** Plaintiff's answer in opposition to motion for summary judgment by all defendants at 4.

again does not suffice to withstand a motion for summary judgment.[28]

■ In fact, the only evidence adduced in opposition to defendants' motions is contained in four brief sentences [29] of Enright's affidavit. However, as stated before, articulating legal conclusions [30] rather than setting forth the *facts* upon which such conclusions are based, does not meet the requirements of Rule 56(e). Other parts of the affidavit [31] reiterate plaintiff's theory of liability in impermissibly conclusory language.[32] The mere allegation [33] that the members of the Association comprise seventy-five to ninety percent of the wire belt manufacturers in the nation is, standing alone, insufficient to create a genuine issue of material fact since there is no evidence [34] in the record that its members divulged to it the "most intimate details" of their affairs.[35] In fact, trade associations which compile industry statistics in composite form do not violate antitrust laws.[36] Plaintiff has also failed to adduce facts which would indicate that the defendant Association in any way controlled or fixed prices. Finally, plaintiff's assertion that it would have been "blackballed" had it attempted to join the Association, is likewise insufficient to defeat defendants' motion.[37] Accordingly, the Association's motion for summary judgment on the Sherman Act claims will be granted.

■ As to these same claims,[38] Wiremation defendants argue that, as a matter of law, they cannot be liable as a monopolist since they only produce ten percent [39] of the United States market share of wire belting. We agree. An unrebutted market share of such a small proportion is insufficient to support a claim under Section 2.[40] Therefore, Wiremation defendants' motion will be granted as to this claim.

■ Turning now to plaintiff's claim that Wiremation "*attempted* to monopolize", ultimately at trial plaintiff will be required to prove not only Wiremation defendants' specific intent to monopolize the relevant market but also that they had sufficient "market power to come dangerously close to success".[41] In the present posture, plaintiff, confronted with Wiremation defendants' motion for summary judgment, must, but has failed to, produce any evidence as to the relevant geographic market which it asserts defendants attempted to monopo-

---

**28.** *See* nn.5, 7 and 17.

**29.** See Affidavit of John E. Enright, III, ¶¶ 8, 9, 10 and 12.

**30.** Id. at ¶ 10.

**31.** *Id.* at ¶¶ 8, 9.

**32.** *Maiorana v. MacDonald*, 596 F.2d 1072, 1080 (1st Cir. 1980).

**33.** Enright Affidavit at ¶ 12.

**34.** *Altemose Construction Co. v. Building & Construction Trades Council*, 443 F.Supp. at 504.

**35.** *United States v. American Linseed Oil Co.*, 262 U.S. 371, 389, 43 S.Ct. 607, 611, 67 L.Ed. 1035 (1923).

**36.** *Maple Flooring Manufacturers' Association v. United States*, 268 U.S. 563, 45 S.Ct. 578, 69 L.Ed. 1093 (1925). *See also American Column & Lumber Co. v. United States*, 257 U.S. 377, 42 S.Ct. 114, 66 L.Ed. 284 (1921).

**37.** *Peterson v. Lehigh Valley District Council*, 512 F.Supp. 1150 (E.D.Pa.1981) (plaintiffs' failure to apply for admission to defendant's program warrants granting of summary judgment on plaintiff's contention that defendant wrongfully refused to admit them to the program).

**38.** 15 U.S.C. § 2.

**39.** Affidavit of Alexander Lumsden, ¶ 8.

**40.** *United States v. Aluminum Co. of America*, 148 F.2d 416, 424 (2d Cir. 1945) ("it is doubtful whether 60% or 64% would be enough; and certainly 33% is not"). *See also United States v. United States Steel Corp.*, 251 U.S. 417, 447, 40 S.Ct. 293, 297, 64 L.Ed. 343 (1920) (50% is insufficient to find monopoly power), *Outboard Marine Corp. v. Pezetel*, 461 F.Supp. 384, 404 (D.Del.1978) (35% is insufficient to find monopoly power), *Structure Probe, Inc. v. Franklin Institute*, 450 F.Supp. 1272, 1286 (E.D.Pa. 1978), *aff'd*, 595 F.2d 1214 (3d Cir. 1979) ("barely half, or less than half" is insufficient to find monopoly power).

**41.** *Harold Friedman, Inc. v. Kroger*, 581 F.2d at 1079, *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1348 (3d Cir. 1975).

lize. Plaintiff has also failed to point to any evidence sufficient to raise an issue of material fact that defendants' ten percent[42] of the total United States market gave them sufficient power to come "dangerously close" to successful monopolization.[43] Accordingly, Wiremation defendants' motion for summary judgment as to Count Two will be granted.

Finally, Count Three, a pendent state claim for tortious interference with contractual relations, will be dismissed. Pendent jurisdiction need not be exercised in every instance, for the doctrine is discretionary and a plaintiff may claim no right thereto.[44]

An appropriate order will be entered.

---

**42.** Lumsden Affidavit, ¶ 8.

**43.** *Harold Friedman, Inc. v Kroger*, 581 F.2d at 1080 (uncontradicted market data that defendant had a market share of 9.2%—15.5% is insufficient to withstand a motion for summary judgment on a § 2 attempted monopolization claim).

**44.** *United Mineworkers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).