**JOSEPH CICCONE & SONS, INC., Plaintiff,**

v.

**EASTERN INDUSTRIES, INC.,** Stabler Industries, Inc., Donald B. Stabler and Stabler Construction Company, Defendants.

Civ. A. No. 81–3203.

United States District Court,
E. D. Pennsylvania.

April 7, 1982.

Louis R. Koerner, New Orleans, La., for plaintiff.

R. Stephen Shibla, Frank A. Sinon, Harrisburg, Pa., for defendants.

## PROCEEDINGS

TROUTMAN, District Judge.

Now, this is a case in which the jurisdiction of this Court is invoked pursuant to Section 16 of the Clayton Act, 15 U.S.C. 26 and 28 U.S.C. 1331 and 1337, in which the plaintiff, a producer of blacktop and purchaser of aggregates, that is, stones used in road construction, complains that a series of recent transactions by the defendants, Stabler Companies, Inc., Donald B. Stabler and Stabler Construction Company, all hereinafter referred to collectively sometimes as Stabler, violates Sections 1 and 2 of the Sherman Act, 15 U.S.C. Sections 1 and 2 and Section 7 of the Clayton Act, 15 U.S.C. 18. Defendant or defendants, moving for summary judgment, assert a variety of defenses to this action. We shall address them seriatim.

First, Stabler argues that plaintiff lacks standing to bring this action in that plaintiff has not sustained any direct injury as a result of defendant's conduct. In support of this theory, defendant inveighs against plaintiff's alleged failure to to substantiate its injuries. In doing so, we think defendant misconceives the burden which Federal Rule of Civil Procedure 56 imposes upon it at this early stage of the proceedings. Rule 56 imposes the initial burden upon the movant to "foreclose the possibility" that genuine issues for trial exist. We here cite *Adickes v. Kress*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Only then must the party resisting the motion come forward with evidence sufficient to create a genuine issue of material fact. Here we believe that the defendant has failed to show, as an initial matter only, that it is entitled to judgment as a matter of law.

Furthermore, the cases relied upon by the defendant do not support its contention at this early stage of the proceedings where plaintiff must show actual damage to its business in order to assert standing. For example, in *Hutchinson v. American Oil Co.*, 221 F.Supp. 728 (E.D.Pa.1963), it was decided on a motion for preliminary injunction. In such cases, plaintiffs must show a substantial likelihood of success on the merits. See Fed.R.Civ.P. 65. In the case at bar, defendant must make a greater showing. It must show that it is entitled, by reason of its motion, to judgment as a matter of law at this early stage. See *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981).

Moreover, defendants' reliance upon *Credit Bureau Reports, Inc. v. Retail Credit Co.*, 476 F.2d 989, 992 (5th Cir. 1973), is we believe at this time misplaced. There the Court discussed standing in the context of the plaintiff's burden of showing the degree

of harm which it suffered. However, there the burden was discussed in a post-trial setting, after the Court had the full opportunity to view all the evidence and determine the degree of harm, if any, which accrued to the plaintiff.

In *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 671 (D.C.Cir.1977), defendant submitted uncontradicted affidavits which foreclosed genuine issues of material fact. The plaintiff there failed to rebut them. In fact, as it was there stated, the plaintiff only submitted "speculations and hypotheses." See page 672. In such circumstances, we concede that summary judgment is clearly appropriate. See *Wire Mesh Products, Inc. v. Wire Belting Assn.*, 520 F.Supp. 1004, 1006 (E.D.Pa.1981.)

Upon oral argument this morning in support of its motion for summary judgment, defendants rely upon plaintiff's deposition testimony that he "didn't know," whether or not he was injured by defendants' conduct. From this the defendants argue that plaintiff cannot be heard to complain of any injuries which he suffered at the defendants' hands. However, plaintiff's deposition contains more specifically the following question and answer:

Q "Has your company suffered any dollar injuries?

A Possibly. I don't know if Keystone told Eastern about prices. I don't know. I mean, I don't know if _____ is a fair price."

Later, in response to counsel's question regarding the allegations in the complaint of a price squeeze, the plaintiff stated:

"I would have to admit that that was written by my attorney and I'm not exactly sure what he meant."

Neither of these excerpts, in our opinion, support or compel the entry of summary judgment for plaintiff's inability to specify the harm which he or it purportedly suffered at the defendants' hands.

As to the plaintiff's inability to define the harm which he or it suffered, plaintiff admitted only that he doesn't know how he was harmed but that he believes that he was harmed. This lack of specific knowledge regarding his injury is not surprising, I guess, given the fact that this case promises to be a complex trial "where motive and intent will play leading roles and proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." Says the Court in *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

Moreover, plaintiff's apparent complete reliance upon counsel's expertise in drafting the complaint is not fatal to the case since clients in complex cases are not required to understand the various factual and legal components of their cases. To graft such a requirement onto the federal rules of evidence would sanction a return to the days of "old procedural booby traps which common-law pleaders could set to prevent unsophisticated litigants from ever having their day in court." Citing *Surowitz v. Hilton Hotel Corp.*, 383 U.S. 363, 373, 86 S.Ct. 845, 851, 15 L.Ed.2d 807 (1966).

In sum, Stabler assails plaintiff for failure to substantiate any injury flowing from the alleged violations. However, Rule 56 motions place the initial burden upon the moving party. The ultimate burden which movant bears is two-fold: it must show an absence of factual issues and entitlement to judgment as a matter of law. Defendant cannot meet this heavy burden by quoting language from cases in different procedural postures. Given in addition to that the oral arguments this morning which repeatedly raised factual disputes, we feel we have no alternative but to deny the defendants' motion regarding plaintiff's standing.

■ Now we turn to the defendants' ability to conspire, the second point raised. As noted earlier, all defendants are "related." That seems to be conceded. Defendant contends that, for present purposes, the various Stabler corporations are, in effect, one corporate entity. Since a single corporation cannot conspire with itself, defendant urges us to grant summary judgment on all claims grounded on Section 1 of the Sherman Act.

That statute prohibits contracts, combinations and conspiracies in restraint of trade. The parties do not dispute that a corporation cannot conspire or combine with itself and that joint action is a necessary prerequisite to a finding of Section 1 liability. The question, however, at this stage is whether defendants have adduced unrebutted facts sufficient to prove as a matter of law that the Stabler corporations are, in fact, a single corporate entity. We conclude on the basis of the scant and skimpy record before us at this time that they have not.

First, viewing the facts in the light most favorable to the plaintiff, there is presently some evidence before the Court that the Stabler entities do hold themselves out as competing with each other. At least certain testimony of Carl Kresge at the hearing on an application for temporary restraining order may so suggest.

Secondly, the theory that the Stabler defendants are unable to conspire inter se is "not well founded in law." And we here call attention to the case of *Columbia Metal Culvert Co., Inc. v. Kaiser Aluminum & Chemical Corp.*, 579 F.2d 20, 33 (3d Cir. 1978). So long as "two or more legally distinct corporations" conspire, a Section 1 violation can be made out. See the Columbia Metal case just cited and see also *Cromar Co. v. Nuclear Materials and Equipment Corporation*, 543 F.2d 501, 512 (3d Cir. 1976) holding that the fact of common ownership does not save corporations from their obligations to act as separate entities. Again, on a general basis, see *Perma Mufflers v. International Parts Corp.*, 392 U.S. 134, 141–42, 88 S.Ct. 1981, 1985–86, 20 L.Ed.2d 982 (1968) and *Timken Roller Bearing Co. v. United States*, 341 U.S. 593, 598, 71 S.Ct. 971, 974, 95 L.Ed. 1199 (1951).

Finally, defendants' reliance upon *In re Rea Express, Inc.*, 412 F.Supp. 1239 (E.D. Pa.1976) (Becker, J.) and *In re Penn Central Securities Litigation*, 367 F.Supp. 1158 (E.D. Pa.1973) (Lord, C. J.) is, we believe, misplaced. Each of those cases involved a suit by a subsidiary against its parent corporation. In such cases, a section 1 claim will,

of course, not lie. Where, however, as here, a third party alleges a conspiracy against members of a "family" or "related corporations," it would appear that Section 1 strictures are applicable. We here cite the case of the *United States v. Yellow Cab Co.*, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947).

That brings us to the next question where defendant also asserts that the doctrine of laches bars consideration of its May, 1977 acquisition of the Trumbower Company since suit was instituted more than four years thereafter. *Farbenfabriken Bayer A. G. v. Sterling Drug Co.*, 197 F.Supp. 627, 629 (D.N.J.1961), *aff'd*, 307 F.2d 210 (3d Cir. 1962), *cert. denied*, 372 U.S. 929, 83 S.Ct. 872, 9 L.Ed.2d 733 (1963). That case held that the equitable remedies provided for in Section 16 of the Clayton Act are predicated upon the availability of a legal cause of action under Section 4 of the Act, as counsel have repeatedly stated in their oral arguments. Where the legal remedy is barred by the statute of limitations, the equitable remedy is also barred.

Plaintiff does not dispute defendants' characterization of the *Farbenfabriken* case. Rather, it asserts that *I.T.T. Corp. v. G.T.E.*, 518 F.2d 913 (9th Cir. 1975) is controlling. There the court held that "continuing acts" create an exception to the limitations doctrine. See page 929 of that opinion. Plaintiff seeking sanctuary and refuge in this language contends that defendants' continuing acts of acquisitions extends the period within which suit must be brought. We here refer to page 16 of the plaintiff's brief. We agree in part with the plaintiff's position.

I.T.T. did indeed hold that the limitations period is extended for continuing acts violative of the Clayton Act. However, the types of acts which may properly extend the limitation period do not include acquisitions. As the court explained, plaintiff "cannot justify viewing the defendants' acquisitions together as a continuing violation of the antitrust laws in order to avoid the defense of laches. If defendants' early acquisitions had the effect which plaintiff contends they had, plaintiff cannot belated-

ly challenge them on the theory that they are now appraised collectively with the more recent ones as part of a continuing acquisition program. However, other acts allegedly committed by defendants may well fall within the continuing acts exception." This language is quoted from 518 F.2d at 929.

Since laches will not extend the period of time within which plaintiff must bring suit, the question then becomes: When did the limitation period begin to run? As *I.T.T. v. G.T.E., supra,* noted, a "double standard" exists regarding the commencement of the limitations period. Where injunctive relief is sought to prohibit continuing violations, the period does not begin to run until the actual violation occurs. However, where relief is sought to prevent an impending violation, the laches period normally runs from the time that plaintiff first confronted the enjoinable threat. See the *I.T.T.* case at pages 928 and 929. Here, as we gather from oral argument and otherwise, it appears to be the plaintiff's claim that the actual violation of the antitrust laws occurred within four years of the filing of the complaint.

Although this presents a close question, we are convinced on the incomplete record before us at this time that the limitations period did not begin to run until the plaintiff was allegedly injured, if at all, by defendants' acquisition of Trumbower. That did not occur until defendant also purchased the Bethlehem facility and consummated the Coplay transaction. Here see *Magnus Petroleum Co., Inc. v. Skelly Oil Co.,* 446 F.Supp. 874, 883 (E.D.Wisc.); *Metropolitan Liquor Co., Inc. v. Hueblein, Inc.,* 305 F.Supp. 946 (E.D.Wisc.1969). Hence, at this stage of the proceeding, we shall reject the defendants' assertion that summary judgment should be granted due to plaintiff's failure to commence suit in a timely fashion. Additional facts and evidence produced in further hearing on the application for a permanent injunction may well prove otherwise.

That then brings us to the failing company doctrine. Where once again we reject the defendants' argument that the doctrine, as applied to the Bethlehem acquisition, compels entry of summary judgment, at this early stage of the proceeding, as to plaintiff's claims under Section 7 of the Clayton Act.

Successful invocation of that doctrine requires proof that the defendant acquired the failing company, Bethlehem, by way of a "reasonable offer which effects the least anti-competitive result." See the defendants' brief in support of the motion at page 27. We do not believe that the record currently before the Court, at this early stage, permits us to draw the inference that defendants' conduct was "reasonable" as a matter of law and that the purchase will work the least anticompetitive effect.

Plaintiff also inveighs against defendants raising the failing company defense by way of a summary judgment motion and asserts that the failure to plead the doctrine as an affirmative defense forever bars consideration thereof.

We begin by noting that the failing company doctrine is an affirmative defense within the meaning of Fed.R.Civ.P. 8(a). We cite *Zenith Radio Corp. v. Matushita Electrical Industries Co.,* 513 F.Supp. 1100, 1330 (E.D.Pa.1980). Affirmative defenses are normally raised in the answer, and failure to do so under certain circumstances amounts to a waiver of the defense. See *Santos v. Alaska Bar Assn.,* 618 F.2d 575, 577 (9th Cir. 1980); *Rogin v. Bensalem Township,* 616 F.2d 680, 684 n. 11 (3d Cir.), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1980). Also see *Walter E. Heller and Co. v. O/S Sonny,* 595 F.2d 968 (5th Cir. 1979); *Henry v. First National Bank of Clarksdale,* 595 F.2d 291, 298 n.1 (5th Cir. 1979), cert. denied, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). Also see *Saetin v. Commissioner of Public Safety,* 535 F.2d 430, 433 (8th Cir. 1976).

Granted then that the failing company doctrine is an affirmative defense within the meaning of the rules, that does not end our consideration or discussion of the matter. The rule does not bar consideration of

affirmative defenses which are raised by motions for summary judgment. Here see 2A, *Moore's Federal Practice*, Section 8.28.

Hence, we conclude that defendant raised the defense on motion for summary judgment. Having thus given the plaintiff adequate notice thereof, defendant will be permitted to file amended answers so that the matter may be fully treated on hearing seeking a permanent injunction. Opportunity for necessary discovery, if required, will be provided.

As to the questions involving RSE, defendants' motion for summary judgment will be granted to all of the plaintiff's claims grounded in Section 7 of the Clayton Act which arise out of the Stabler acquisition of the RSE, Harrisburg facility.

■ Section 7 of the Clayton Act prohibits mergers which produce "a firm controlling and undue percentage of the relevant market, and results in a significant increase in the concentration of firms in that market, is so inherently likely to lessen competition substantially that it must be enjoined in the absence of evidence clearly showing that the merger is not likely to have such anticompetitive effects." See *United States v. Philadelphia National Bank*, 374 U.S. 321, 363, 83 S.Ct. 1715, 1741, 10 L.Ed.2d 915 (1963).

There the Court stated that the challenged merger which resulted in control of at least thirty percent of the commercial banking business in the geographic market and increased concentration by more than thirty-three percent was presumptively unlawful. Other cases have gone even farther. See *United States v. Pabst Brewing Co.*, 384 U.S. 546, 86 S.Ct. 1665, 16 L.Ed.2d 765 (1966) and *United States v. Von's Grocery*, 384 U.S. 270, 86 S.Ct. 1478, 16 L.Ed.2d 555 (1966), both holding that Section 7 was violated by mergers of companies with less resulting market power than existed in the Philadelphia National Bank case. Interesting here, you might compare *United States v. General Dynamics Corp.*, 415 U.S. 486, 94 S.Ct. 1186, 39 L.Ed.2d 530 (1966) permitting a horizontal merger in a highly concentrated industry upon an examination of the particular market, its structure, history and probable future.

There are two types of horizontal mergers which are typically challenged. First, the purchase of a competitor existing within the defined geographic market. See *Von's Grocery*, already cited. Second, an expansion, through merger, of an existing company into a geographic area in which the company had not previously competed, a so-called geographic market extension. See *United States v. Marine Bancorporation*, 418 U.S. 602, 94 S.Ct. 2856, 41 L.Ed.2d 978 (1974). It may well be that the preferred method of entry into a geographic market is through a de novo or "foothold acquisition" rather than merger with an on-going, successful enterprise. See the *Marine Bancorporation* just cited and compare *Philadelphia National Bank*, 374 U.S. at 374, 83 S.Ct. at 1747, holding that corporate growth by internal expansion is socially preferable to growth by acquisition.

■ In the case before us, the defendants' so-called "merger" with RSE is arguably the type of transaction which *Von's Grocery* considered. Clearly, Section 7 reaches a variety of transactions generically referred to as mergers, consolidations and acquisitions of assets. However described, they are proscribed where appropriate. And here we call attention to *United States v. Philadelphia National Bank*, once again. The statute prohibits, under specified circumstances, the purchase of another's market power. Here, however, no such transaction occurred regarding the defendants' purchase of RSE. The parties do not dispute that defendants purchased RSE in Harrisburg from a secured creditor, that at the time of the acquisition RSE was not in business, had no on-going business and no market power. Stabler purchased RSE's productive capacity, i.e. its machinery. It did not purchase any of its good will or, importantly, any of its market share, since RSE had none. Accordingly, the RSE purchase appears to be nothing more than the acquisition of what might be loosely described as second-hand machinery. The complained-of transaction is more closely

analogous to an internal company expansion rather than a merger, i.e., the purchase of market power.

However, to the extent that the RSE acquisition is construed as violative of Section 2 of the Sherman Act, defendants' motion will be denied. Testimony adduced at the hearing upon plaintiff's request for a temporary restraining order, when viewed in the light most favorable to the plaintiff, demonstrates that RSE plant was purchased for use as a "back-up." facility; this, notwithstanding the fact that the defendant currently had excess plant capacity. Under such circumstances, purchase of available excess plant facilities can or may be viewed as an attempt to "exclude competition." See *United States v. E. I. duPont*, 351 U.S. 377, 391, 76 S.Ct. 994, 1005, 100 L.Ed. 264 (1956). Again, this result is reached on the basis of incomplete testimony offered in support of application for a temporary restraining order, which testimony was never ultimately completed, and is by no means determinative of the results on application for a permanent injunction upon the completion of the taking of all testimony and the submission of all evidence.

■ That brings us to the Coplay transaction where plaintiff's complaint attacks defendants' exclusive right to remove dolomite stone from the Coplay cement quarry. Dolomite stone, a necessary and dominant ingredient in aggregate production is found in geological formations adjacent to cement rocks. Hence, Coplay Cement Company is a major source of dolomite rock in the general market area. Defendants' contention that their exclusive right to acquire Coplay's dolomite rock cannot violate strictures imposed by Section 7 of the Clayton Act, we think, misses the mark. Testimony adduced at the hearing on application for a temporary restraining order shows that defendants knew that Coplay could enter the aggregate business within one year. Hence, their acquisition by an exclusive lease of a potential market entrant can, again on the basis of the admittedly scant record before us at this early stage of the proceeding, be viewed as possibly violative

of Section 2 of the Sherman Act. This is true since potential market entrants can affect market behavior even while waiting in the wings.

■ Finally, that brings us to the application for divestiture by a private party. That is, whether a private party may seek divestiture under Section 16 of the Clayton Act which provides in relevant part that:

"Any person, firm, corporation or association shall be entitled to sue for and have injunctive relief, in any court in the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws." (15 U.S.C. 26)

At issue in the instant case is the interpretation of the term "injunctive relief."

In its prayer for relief, the plaintiff requests divestiture of some of the defendants' recently acquired facilities. Defendants rely upon the Ninth Circuit case of *I.T.T. v. G.T.E.*, heretofore cited, which held that divestiture is not an available remedy to private antitrust plaintiffs. Shortly after that case was decided, the Third Circuit had the opportunity to confront the same issue. It held that the availability of divestiture, as a remedy to a private plaintiff, must be made on a "case-by-case" basis. Whatever that means. See *NBO Industries Treadway Co., Inc. v. Brunswick Corp.*, 523 F.2d 262, 278–79 and n. 17 (3d Cir. 1975), reversed on other grounds at 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701. Therefore, once again, we cannot at this early stage conclude, as a matter of law, under the Third Circuit case just cited, that divestiture is an unavailable remedy and never appropriate on application of a private party. Here see *Julius Nasso Concrete Corp. v. DIC Concrete Corp.*, 467 F.Supp. 1016, pages 1024 & 1025 (S.D.N.Y.1979).

Hence, upon the limited and incomplete record before us, we shall deny the defendants' motion for summary judgment and an appropriate order will issue. That order will also grant the defendants' motion for summary judgment as to plaintiff's Section 7 Clayton Act claims arising out of defendants' acquisition of the RSE facility. It will

further provide that the defendant may amend its answer, raising the affirmative defense of the failing company doctrine with respect to the acquisition of the Bethlehem Plant.